## UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LOCAL UNION NO. 98                          :
INTERNATIONAL BROTHERHOOD OF                :
ELECTRICAL WORKERS, et al.                  :       Civil Action No. 11-4579
                                            :
                              Plaintiffs    :
                      v                     :
                                            :
RGB SERVICES, LLC, et al.                   :
                                            :
                              Defendants    :
_____    :

## **ORDER**

AND NOW, this            day of               , 2012, upon consideration of Defendants'

Motion for Summary Judgment, and response thereto, it is hereby ORDERED and DECREED that

Defendants' Motion is DENIED.


BY THE COURT:


_____
                                                                J.

UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOCAL UNION NO. 98 | : | |
| INTERNATIONAL BROTHERHOOD OF | : | |
| ELECTRICAL WORKERS, et al. | : | Civil Action No. 11-4579 |
| | : | |
| Plaintiffs | : | |
| v | : | |
| | : | |
| RGB SERVICES, LLC, et al. | : | |
| | : | |
| Defendants | : | |
| | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT PURSUANT TO RULE 56 OF THE FEDERAL
<u>RULES CIVIL PROCEDURE</u>**

The plaintiffs, by and through their attorneys Marino, Conroy & Coyle provides the

instant submission along with an Appendix to this Honorable Court in opposition to Defendants'

Motion for Summary Judgment.


I.     <u>**INTRODUCTION**</u>

This action is brought in connection with defendant RGB Services, LLC and its principal

defendant Michael Metsikas' failure to remit applicable contributions payable to multi-employer

plans pursuant to the terms of the plan or a collectively bargained agreement in violation of  29

U.S.C. §1145.   On or about March 23, 2001, RGB Services, LLC, Inc. became a party to the

multi-employer Sound and Communication Commercial Voice-Data-Video Agreement entered

into between Local Union No. 98, IBEW and the Philadelphia Division of the Penn-Del-Jersey

Chapter, National Electrical Contractor's Association.   Pursuant to the labor agreement

participating employers, such as the defendant RGB Services, LLC, are required to make

monthly payments to Local Union No. 98 to satisfy contributions to the various multi-employer

benefit funds established under the authority of § 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5),

and § 3(3) and (37) of ERISA, 29 U.S.C. § 1002(3) and (37).  Pursuant to the provisions of the

Sound and Communication Commercial Voice-Data-Video Agreement and Trust Agreements

establishing the multi-employer benefit funds, a payroll compliance review was performed by

certified public accountant Jacquelyn K. Coyle.  The payroll compliance review revealed that

defendant RGB Services, LLC failed to remit contributions payable to the multi-employer benefit

funds during the calendar years 2006, 2007, and 2008.  The payroll compliance review in

coordination with intelligence collected from former RGB Services, LLC employees revealed

that defendant Michael Metsikas regularly and routinely used company funds to satisfy personal

expenses.

On July 20, 2011, the plaintiffs initiated the instant matter against defendants RGB

Services, LLC and defendant Michael Metsikas. Plaintiffs assert a claim against defendant RGB

Services, LLC that it failed to satisfy the payment of contribution due the multi-employer benefit

plans pursuant to the terms of the plan or the terms of a collectively bargained agreement.

Plaintiffs assert a claim against defendant Michael Metsikas that he is personally liable to satisfy

defendant RGB Services, LLC's obligation to make contributions to the multi-employer benefit

funds upon the basis of the equitable principal of piercing the corporate veil.  On or about July

18, 2012, the defendants' filed a Motion for Summary Judgment requesting that summary

judgment be granted in favor of the defendants and against the plaintiffs on the causes of action

set forth in the Complaint.  The plaintiffs' instant response in opposition to the defendants'

Motion for Summary Judgment follows.

II.    **MATERIAL FACTS OF RECORD**

     A.    **Defendant RGB Services, LLC Is an Employer within the Meaning of ERISA and A Signatory Contractor Bound to the Provisions of the Sound And Communication Commercial  Agreement, Supplements, Addendums And Appendices Entered Into Between Local Union No. 98, IBEW and The Philadelphia Division of The Penn-Del-Jersey Chapter, National Electrical Contractor's Association**

The exercise of discovery disclosed the below listed material facts which are either undisputed or must be viewed in the light most favorable to the plaintiff.  On March 23, 2001, defendant RGB Services, LLC executed a Letter of Assent to the Sound and Communication Commercial Voice-Data-Video Agreement,  Supplements, Addendums, and Appendices which served to appoint the Philadelphia Division of the Penn-Del-Jersey Chapter, National Electrical Contractor's Association as defendant RGB Services, LLC's collective bargaining agent and bound defendant RGB Services, LLC to the provisions of the terms of the present and future Sound and Communication Commercial Voice-Data-Video Agreement,  Supplements, Addendums, and Appendices until defendant RGB Services, LLC  provided proper written notice of termination of the same [Appendix Exhibit 1 – Letter of Assent and Sound and Communication Commercial Voice-Data-Video Agreement,  Supplements, Addendums, and Appendices]; [Appendix Exhibit 2 - Deposition Michael Metsikas March 23, 2012, p. 41 line 8 – p, 42 line p. 22];  [Appendix Exhibit 3 – Affidavit of Ed Coppinger].   Discovery revealed that defendant Michael Metsikas is a principle of defendant RGB Services, LLC authorized to execute the Letter of Assent and Sound and Communication Commercial Voice-Data-Video Agreement,  Supplements, Addendums, and Appendices on behalf of defendant RGB Services, LLC [Appendix Exhibit 2 - Deposition Michael Metsikas March 23, 2012, p. 41 line 8 – p, 42 line p. 22]; [Appendix Exhibit 4 – Complaint]; [Appendix Exhibit 5 – Defendants' Answer to

3

Plaintiffs' Complaint and Affirmative Defenses – Paragraph 8]. Defendant RGB Services, LLC is an employer within the meaning of 29 U.S.C.A. § 1002(5) [Appendix Exhibit 1 – Letter of Assent and Sound and Communication Commercial Voice-Data-Video Agreement, Supplements, Addendums, and Appendices]. At all material times, defendant RGB Services, LLC has not provided written notice of termination of the agreement to the Philadelphia Division of the Penn-Del-Jersey Chapter, National Electrical Contractor's Association and Local Union No. 98, International Brotherhood of Electrical Workers Union at least 150 days prior to the anniversary date of the applicable approved labor agreement as set forth within the provisions of the Letter of Assent  [Appendix Exhibit 1 – Letter of Assent] ; [Appendix Exhibit 3 – Affidavit of Ed Coppinger]; [Appendix Exhibit 16 – Affidavit of  Jeffrey P. Scarpello, Esquire].

**B. The Local Union No. 98, International Brotherhood of Electrical Workers Sound and Communication Health & Welfare Fund, The  Profit Sharing Fund,  The Apprenticeship Training Trust Fund, The Labor Management Cooperation Fund, and The National Electrical Benefit Fund Are Employee Benefit Plans within the meaning of 29 U.S.C. §1002**

The Local Union No. 98, International Brotherhood of Electrical Workers Sound and Communication Health & Welfare Fund is a multi-employer benefit fund established by Local Union No. 98, IBEW April 1, 1998, for the purpose of providing members/employees with medical care and welfare benefits within the meaning of 29 U.S.C. §1002(1)  [Appendix Exhibit 6 – Declaration of Trust Agreement establishing the Local Union No. 98, International Brotherhood of Electrical Workers Sound and Communication Health & Welfare Fund and amendments thereto]. The Local Union No. 98, International Brotherhood of Electrical Workers Profit Sharing Fund/ Deferred Income Plan is a is a multi-employer benefit fund established by

Local Union No. 98, IBEW December 30, 1983, for the purpose of providing members/employees and their beneficiaries with benefits within the meaning of 29 U.S.C. §1002(2)  [Appendix Exhibit 7 – Declaration of Trust Agreement establishing the Local Union No. 98, International Brotherhood of Electrical Workers Profit Sharing Fund (also referred to as The Deferred Income Plan)  and amendments thereto].  The Apprenticeship Training Trust Fund is a multi-employer benefit fund jointly established by Local Union No. 98, IBEW and the National Electrical Contractors Association December 24, 1975, for the purpose of defraying costs of apprenticeship or other training programs within the meaning of 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5) [Appendix Exhibit 8 – Declaration of Trust Agreement establishing the Electrical Workers Joint Apprenticeship and Training Trust Fund].  The Labor Management Cooperation Fund is a multi-employer benefit fund jointly established by Local Union No. 98, IBEW and the National Electrical Contractors Association June 1997 pursuant to 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), for the purpose of defraying costs of apprenticeship or other training programs [Appendix Exhibit 9 – Declaration of Trust Agreement establishing the Labor Management Cooperation Fund].  The National Electrical Benefit Fund ("NEBF") is a multi-employer benefit fund jointly established by Local Union No. 98, IBEW and the National Electrical Contractors Association September 3, 1946 and restated January 1, 2000, for the purpose of providing retirement and related benefits to employees in the electrical contracting industry within the meaning of 29 U.S.C. §1002(2) [Appendix Exhibit 10 – Restated Employees Benefit Agreement and Trust for the National Electrical Benefit Fund].

**C.      Plaintiff Has Produced An Expert Report Containing Compelling Proof Of Defendant RGB Services, LLC Failure to Remit Contributions In Compliance With 29 U.S.C. §1145**

<u>***Expert Report of Certified Public Accountant Jacquelyn K. Coyle, CPA***</u>

Plaintiff has submitted an expert witness report revised February 12, 2010, generated by a qualified payroll compliance reviewer Jacquelyn K. Coyle, CPA.  Jacquelyn K. Coyle is a certified public accountant employed by the accounting firm of Novak/Francella.  She possesses extensive training and experience in the field of payroll compliance review and understanding of the unique terms of collective bargaining agreements. She conducted a payroll compliance review of defendant RGB Services, LLC to determine if contributions were correctly submitted to the multi-employer benefit funds established by Local Union No. 98, IBEW.  Ms. Coyle's curriculum vitae and her twelve (12) page expert revised payroll compliance review report and supporting papers which she prepared as a result of her analysis of accounting and financial records maintained by defendant RGB Services, LLC  is commended to the Court's attention [Appendix Exhibit 11 - Expert Report of certified public accountant Jacquelyn K. Coyle, CPA. and curriculum vitae].  As expressed in her report and supporting papers, Ms. Coyle has determined to a reasonable degree of accounting certainty that the defendant RGB Services, LLC has failed to submit contributions due the multi-employer benefit funds in amounts set forth:

(i)      Annuity Fund /Profit Sharing in connection with the review period of January 1, 2006, through December 31, 2008, in the amount equal to $116,880.76;

(ii)      Sound and Communication Health & Welfare Fund in connection with the review period of January 1, 2006, through December 31, 2008, in the amount equal to $230,452.22;

6

(iii)     Apprentice Training Fund in connection with the review period of January 1, 2006, through December 31, 2008, in the amount equal to $24,648.37;

(iv)     The Labor Management Cooperation Fund in connection with the review period of January 1, 2006, through December 31, 2008, in the amount equal to $317.21.

Ms. Coyle arrived at her conclusions after engaging in discussion with defendant RGB Services, LLC's  designated accountant Philip Indictor and examining payroll documentation, payroll registers, payroll tax documentation, various 1099 and 1096 Tax Forms, cancelled checks, bank statements, invoices generated by apparent subcontractors, defendant Michael Metsikas' redacted 2008 personal income tax return, all of which were provided by Philip Indictor and defendant Michael Metsikas over an (11) month period.   Ms. Coyle reviewed further Participant History Reports provided by the administrator of the multi-employer benefit funds and the NEBF  [Appendix Exhibit 12 - Deposition Jacquelyn K. Coyle, CPA May 25, 2012, p. 25 p. 15 – p. 27 line 22; p. 39 line 12 – p. 40 line 21; p. 41 line 15 – p. 42 line 17 ].   Her report concludes that defendant RGB Services, LLC incurred payroll expenses as a result of performing a scope of work covered by the Sound & Communication Commercial Agreement during the calendar years of 2006, 2007, and 2008 which was not reported to the funds.   The foregoing represents only a summary of the plaintiffs' expert report which contains a far more detailed and compelling showing of the defendant RGB Services, LLC breach of its obligation to satisfy contributions within the meaning of Section 1145 of The Employee Retirement Income Security Act, 29 U.S.C. §1145.

**D.    Defendant Michael Metsikas was the only functioning officer of Defendant RGB Services, LLC and Engaged In a Practice of Siphoning The Assets of The Defendant RGB Services, LLC And Using Company Funds To Satisfy <u>Personal Expenses</u>**

Plaintiffs' investigation of the instant action has resulted in the collection of intelligence provided by former employees of defendant RGB Services, LLC as it relates to the manner in which defendant RGB Services, LLC's financial manager defendant Michael Metsikas conducted the affairs of defendant RGB Services, LLC and the expenditure discretion exercised by defendant Michael Metsikas.  Intelligence provided by former employee of defendant RGB Services, LLC, Mr. Marco Rivera, reveals compelling and probative facts supporting the plaintiffs' assertions that defendant Michael Metsikas was the only functioning officer  of defendant RGB Services, LLC [Appendix Exhibit 2 - Deposition Michael Metsikas March 23, 2012, p. 30 line 22 – p. 33 line 3; p. 40 line 8- 23; p. 41 line 8 – p, 42 line p. 22];   [Appendix Exhibit 5 -  paragraph 8 of the Defendants' Answer to the Complaint]; [Appendix Exhibit 13 – Affidavit of Marco Rivera] and engaged in a premeditated practice of siphoning assets from the company and using company funds to satisfy personal expenses. Plaintiffs have submitted an Affidavit of Marco Rivera in support of its opposition to the defendants' Motion for Summary Judgment.  Marco Rivera was an employee of defendant RGB Services, LLC during the calendar year 2006 until July 24, 2009, and was assigned to perform the duties of a teledata workman. The responsibilities associated with Mr. Rivera's employment with defendant RGB Services, LLC and his affiliations with defendant Michael Metsikas permitted him to gain an intimate understanding and familiarity of the business dealings and management of RGB Services, LLC. Mr. Rivera's Affidavit which he assisted in preparing is commended to the Court's attention [Appendix Exhibit 13 – Affidavit of Marco Rivera].  As expressed in his Affidavit Mr. Rivera

provides a detail reflecting multiple and continuous accounts of defendant Michael Metsikas' use of company funds to satisfy personal expenses and purchases.

## III.   <u>ARGUMENT</u>

A.   **THE PLEADINGS, DISCOVERY RECORD, AND ATTACHMENTS DEMONSTRATE THAT PLAINTIFFS HAVE MADE OUT A PRIMA FACIE CASE THAT DEFENDANT RGB SERVICES, LLC IS OBLIGATED TO MAKE CONTRIBUTIONS TO MULTI-EMPLOYER PLANS UNDER THE TERMS OF THE PLAN OR UNDER THE TERMS OF A COLLECTIVELY BARGAINED AND THAT A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO WHETHER CONTRIBUTIONS REMAIN UNREMITTED**

(i)   **<u>Summary Judgment Standard</u>**

Rule 56 of the Federal Rule of Civil Procedure permits judgment to be entered if the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. The moving party has the burden of demonstrating that there exists no genuine issue of material fact in dispute[1]. The test to be applied by the court is whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law. [2] In so deciding, a court must view the facts in light of the non-moving party and draw all inferences in that party's favor.  Id. A disputed fact is material if it would affect the outcome of the suit as determined by the substantive law. [3] It is inappropriate for a court to resolve factual disputes and to make credibility determinations at the summary

---

1 Nabisco Inc. v Ellison, 1994 WL 622136 (E.D.Pa.); J.F. Feeser, Inc. v Serv-A-Portion, Inc., 909 F. 2d 1524 (3rd Cir. 1990), cert. denied, 499 U.S. 921 (1991).
2 Arbruster v Unisys Corp., 32 F.3rd 768 (3rd Cir. 1994); Gray v New York Newspapers, Inc., 957 F.2d 1070 (3rd Cir. 1992).

judgment stage.[4]

### (ii)   A Genuine Issue of Material Fact Exists as to Whether Defendant RGB Services, LLC Has Failed To Satisfy Contributions In Compliance with the Terms of the Plans or Under the Terms of the Collectively Bargained Agreement

Count I of the plaintiffs' Complaint sets forth an ERISA claim for relief against defendant RGB Services, LLC for the failure to satisfy its obligation to make contributions and submit withholdings to the aforementioned multi-employer benefit funds pursuant to Section 515 of ERISA, 29 U.S.C.A. § 1145. Section 515 of ERISA, 29 U.S.C.A. § 1145, sets forth in its pertinent parts:

### § 1145. Delinquent contributions

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

The discovery record reveals that there exists no genuine issue of material fact in dispute that defendant RGB Services, LLC is an employer within the meaning of ERISA, that defendant RGB Services, LLC is a party to collecting bargaining agreement, or that defendant RGB Services, LLC is obligated to make contributions to multi-employer plans. There only genuine issue of material fact at issue in connection with Count I of the Complaint is whether defendant RGB Services, LLC has failed to satisfy contributions in compliance with the terms of the plans or under

---

3 Anderson v Liberty Lobby, Inc. , 477 U.S. 242, 248, S.Ct. 2505, 2510, 91 L.Ed. 202 (1986).
4 Big Apple BMW, Inc. v BMW of North America, Inc., 974 F.2d 1358 (3rd Cir. 1992) cert. denied. 113 S.Ct. 1262 (1993).

the terms of a collectively bargained agreement  [Appendix Exhibit 11 - Expert Report of certified

public accountant Jacquelyn K. Coyle, CPA.];   [Appendix Exhibit 3 – Affidavit of Ed Coppinger];

[Appendix Exhibit 14 – Affidavit of Deb Gerber]; [Appendix Exhibit 15 - Report generated by

report dated May 24, 2012, generated by Chad Staller, J.D., M.B.A., M.A.C. and James Markham,

Ph.D. J.D. CPCU].


> **(iii)    Plaintiff's Expert Report Sufficiently Establishes a Prima Facie Case that Defendant RGB Services, LLC Has Failed to Make Contributions to the Multi-employer Plans under the Terms of the Plan or under the Terms of a Collectively Bargained Agreement**

Defendant RGB Services, LLC contends that it is entitled to summary judgment in

connection with Count I of the Complaint upon a theory that the conclusions rendered by

certified public accountant Jacquelyn K. Coyle as a result of her payroll compliance review

should be rejected by the fact-finder.  Defendant RGB Services, LLC does not challenge the

qualifications of plaintiffs' expert, by reason of her experience, training, and education to render

an opinion in the field of payroll compliance review.  Accordingly, this Court viewing the record

in favor of the non-moving party must accept the expert report proffered by the plaintiffs as

having been provided by a qualified expert witness.[5]   Rather, defendants challenge the

sufficiency of the plaintiffs' expert findings and the admissibility of her conclusions. The

plaintiff shall address each of the contentions in order as they appear in the Argument section of

defendants' Memorandum of Law.


*Defendants Falsely Accuse the Conclusions Rendered by Certified Public Accountant Jacquelyn*

---

5 Rauch v. Mike-Mayer, 2001 PA Super 270, 783 A.2d 815 (Pa.Super.2001)

*K. Coyle As Lacking an Independent Basis, Competent Analysis, And Methodology*

Defendants suggest that the results presented in the expert report generated by certified

public accountant Jacquelyn K. Coyle is merely "junk" economics, that there is no basis in

accounting to support her conclusions and as a result this Court should make a finding as a

matter of law that the plaintiffs have failed to establish a prima facie case that defendant RGB

Services, LLC has not made contributions to multi-employer plans pursuant to the terms of the

plan or under the terms of a collectively bargained agreement.   Defendants appear to assert that:

(i) the results of payroll compliance review lack an independent basis, (ii) the payroll compliance

review was not performed with use of a competent analysis, and (iii) that the payroll compliance

review was not performed with use of a competent methodology.  Defendants' charges ignore

that the business records provided by defendant RGB Services, LLC served as the foundation of

the conclusions arrived by Jacquelyn K. Coyle.  As set forth in the Jacquelyn K. Coyle, CPA's

expert report and deposition testimony, the purpose of the payroll compliance review was to

confirm that contributions have been remitted in the correct amounts to the funds by defendant

RGB Services, LLC [Appendix Exhibit 12 - transcript of an oral examination of certified public

accountant Jacquelyn K. Coyle, CPA recorded May 25, 2012, p. 82 line 15].  The payroll

compliance review was performed with the assumption that defendant RGB Services, LLC was

honoring the collective bargaining agreement and was performing covered work subject to the

obligation of payroll contributions [Appendix Exhibit 12 - transcript of an oral examination of

certified public accountant Jacquelyn K. Coyle, CPA recorded May 25, 2012, p. 82 line 9 – p. 83

line 12].  The payroll compliance review was performed with the understanding that in the event

the defendant RGB Services, LLC sought to be exempt from paying payroll contribution to the

funds upon the basis that it was not performing covered work the burden was upon defendant

RGB Services, LLC to provide documentation in support of the assertion that it was not

performing covered work and had no obligation to make payroll contributions pursuant to the

collective bargaining agreement.  [Appendix Exhibit 12 - transcript of an oral examination of

certified public accountant Jacquelyn K. Coyle, CPA recorded May 25, 2012, p. 83 line 10-23].

The methodology used as described in the deposition testimony of certified public accountant

Jacquelyn K. Coyle was to review the totality of payroll and financial information provided by

defendant RGB Services, LLC organized with the use of excel spreadsheets compared against the

participant history reports provided by the administrator of the multi-employer benefit funds and

the NEBF  to confirm if contributions has been remitted in the correct amounts to the funds by

defendant RGB Services, LLC [Appendix Exhibit 12 - transcript of an oral examination of

certified public accountant Jacquelyn K. Coyle, CPA recorded May 25, 2012, p. 48 line 13-24].

Moreover, as set forth in the Jacquelyn K. Coyle, CPA's deposition testimony,  the results of the

payroll compliance report were revised upon defendant RGB Services, LLC providing, after

repeated requests, documentation supporting the conclusion that payment made to accountant

Philip Indictor by defendant RGB Services, LLC satisfied an accounting expense and not a

payroll expense [Appendix Exhibit 12 - transcript of an oral examination of certified public

accountant Jacquelyn K. Coyle, CPA. recorded May 25, 2012, p. 83 line 13 – p. 84 line 14].

Significantly, the defendants offer no expert opinion that the analysis or methodology

used by Jacquelyn K. Coyle, CPA did not conform to industry standard or was otherwise

improper. The defense expert simply concludes, in opposition to the plaintiffs' expert, that

expenses considered during the payroll compliance review did not arise as a result of defendant

13

RGB Services, LLC performance of a scope of work covered by the Sound & Communication

Commercial Agreement during the calendar years of 2006, 2007, and 2008 and therefore no

contributions were owed.  As such, it was perfectly appropriate for Jacquelyn K. Coyle, CPA to

rely upon the business records or the absence thereof supplied by defendant RGB Services, LLC

to confirm that contributions had not been remitted in the correct amounts to the funds by

defendant RGB Services, LLC.


*Misapprehends the Provisions of the Sound and Communication Commercial Agreement entered*
*into between Local Union No. 98, IBEW and the Philadelphia Division of the Penn-Del-Jersey*
*Chapter, National Electrical Contractor's Association*


Defendants  next challenge the sufficiency and admissibility of plaintiffs' expert report on

the basis that certified public accountant Jacquelyn K. Coyle incorporated "claimed contract

provisions which do not exist"  during the performance of the payroll compliance review to

arrive at her conclusions. The defendants do not cite the language of the contract provisions that

"do not exist" in the Sound and Communication Commercial Voice-Data-Video Agreement

which Jacquelyn K. Coyle relied upon to arrive at her conclusions.  The challenge is illegitimate

and ignores the language set forth in the Sound and Communication Commercial Voice-Data-

Video Agreement, Supplements, Addendums, and Appendices and the Declaration of Trust

Agreements establishing the funds. The Sound and Communication Commercial Voice-Data-

Video Agreement, Supplements, Addendums, and Appendices, which have been attached to the

Complaint filed in the instant matter, provide provisions setting forth an obligation of the

signatory contractor to remit monthly payments to the funds consistent with the terms of the

Agreement and the Trust Agreements establishing the funds. Specifically, the Sound and

Communication Commercial Voice-Data-Video Agreement, Supplements, Addendums, and Appendices provide:

- Article VI, Section 6.12 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to contribute to the Local Health and Welfare Plans on behalf of all apprentices and comply with applicable provisions of the Trust Agreement establishing the fund.

- Article VI, Section 6.12 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to contribute to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and comply with applicable provisions of the Restated Employees Benefit Agreement and Trust establishing the fund.

- Article VI, Section 6.14 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to comply with applicable provisions of the Trust Agreement establishing the Local Union No. 98, IBEW Apprentice Training Fund and to remit monthly payments deductions from its employees to the Apprentice Training fund consistent with the terms of the Trust Agreement and Voice-Data-Video Agreement.

- Article VII, Section 7.01 of the of the Sound and Communication Commercial Voice-Data-Video Agreement  obligates defendant RGB Services, LLC  to be bound by and comply with the applicable provisions of the Trust Agreements establishing the Local Union No. 98, IBEW Sound & Communication Health & Welfare Fund, Local Union No. 98, IBEW Profit Sharing Fund, the Local Union

15

No. 98, IBEW Apprentice Training Fund, Local Union No. 98, IBEW Labor Management Cooperative Committee Fund and the National Electrical Benefit Fund.

- Article VII, Section 7.02 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to remit monthly to the National Electrical Benefit Fund's designated local collection agent an amount equal to 3% of its gross monthly labor payroll which it paid to is obligated to pay its employees in the bargaining unit and a completed payroll report prescribed by the National Electrical Benefit Fund.

- Article VII, Section 7.03 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to comply with applicable provisions of the Trust Agreement establishing the Local Union No. 98, IBEW Sound and Communication Health & Welfare Fund and remit monthly payments to the Health & Welfare Fund consistent with the terms of the aforementioned Trust Agreement and the Voice-Data-Video Agreement.

- Article VII, Section 7.04 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to comply with applicable provisions of the Trust Agreement establishing the Local Union No. 98, IBEW Profit Sharing Fund and to remit monthly payments to the Profit Sharing Fund consistent with the terms of the aforementioned Trust Agreement and the Voice-Data-Video Agreement.

16

- Article VII, Section 7.05 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to comply with applicable provisions of the Trust Agreement establishing the Local Union No. 98, IBEW Apprentice Training Fund and to remit monthly payments to the Apprentice Training fund consistent with the terms of the Trust Agreement and the Voice-Data-Video Agreement.

- Article VII, Section 7.07 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to comply with applicable provisions of the Trust Agreement establishing the Local Union No. 98, IBEW Labor-Management Cooperation Fund, and remit monthly contributions consistent with the terms of the aforementioned Trust Agreement and the Voice-Data-Video Agreement.

- Article VII, Section 7.11 of the Sound and Communication Commercial Voice-Data-Video Agreement obligates defendant RGB Services, LLC to pay liquidated damages for  delinquent contributions due the Local Union No. 98, designated depository, in the amount of fifteen percent (10%) of the total contribution delinquent, for each month contributions due the Local Union No. 98 Sound and Communication Health & Welfare Fund, the Local Union No. 98 Profit Sharing Fund, and the Local Union No. 98 Apprentice Training Fund are delinquent, plus interest at the rate of ten percent (2%) per month of the total contribution until full payment has been received.

- Addendums attached to the applicable Sound and Communication Commercial Voice-Data-Video Agreement provides a detail of the percentage calculation to be applied to employer's gross monthly labor payroll to determine the value of contributions to be remitted in association with each of the respective multi-employer benefit funds.

| *Fund* | *Percentage Employer's Gross Monthly Labor Payroll Calculation 2006* |
|---|---|
| Annuity Fund /Profit Sharing Fund | 8.00 % |
| Sound and Communication H&W Fund | 6.61% |
| Joint Apprentice Training Fund | 2.00 % |
| National Labor Management Cooperation Fund | 0.01 % |
| Labor Management Cooperation Fund | 0.75% |
| NEBF | 3.00% |

| *Fund* | *Percentage Employer's Gross Monthly Labor Payroll Calculation 2007* |
|---|---|
| Annuity Fund /Profit Sharing Fund | 10.00 % |
| Sound and Communication H&W Fund | 7.21 % |
| Joint Apprentice Training Fund | 2.00 % |
| National Labor Management Cooperation Fund | 0.01 % |
| Labor Management Cooperation Fund | 0.75 % |
| NEBF | 3.00 % |

| *Fund* | *Percentage Employer's Gross Monthly Labor Payroll Calculation 2008* |
|---|---|
| Annuity Fund /Profit Sharing Fund | 10.00 % |

18

|  |  |
|---|---|
| Sound and Communication H&W Fund | 7.81 % |
| Joint Apprentice Training Fund | 2.00 % |
| National Labor Management Cooperation Fund | 0.01 % |
| Labor Management Cooperation Fund | 0.75 % |
| NEBF | 3.00 % |

*Misapprehends That Defendant RGB Services, LLC's Payments to Non Verified Union Members Are Not Subject To the Collective Bargaining Agreement*

Equally without merit defendants challenge the sufficiency and admissibility of the plaintiffs' expert report upon the basis that plaintiffs' expert included in her calculations payroll expenditures without consideration of whether the recipients of the payments were union or non-union membership of members. The challenge is illegitimate and ignores the Scope of Work clause and Section 3.03(a) set forth in the Sound and Communication Commercial Voice-Data-Video Agreement which provide:

> ### SCOPE
>
> *This Agreement covers construction, installation, maintenance, testing, service and removal of voice, data, and video. Including outside plant, telephone systems, data transmission wire, intercom and telephone interconnect, intercom and sound system, background-foreground music, video entertainment / education systems, multimedia / multiplex systems, terminal equipment, central offices, PABX, fiber optic cable and equipment, railroad communications, micro wave transmission systems, RF systems, V-SAT, CAN cabling and equipment, WAN (wide area networks), LAN (local area networks), and ISDN (integrated systems digital network). However, this Agreement does not apply to new construction or to retrofits in those locals where the Inside Local Union has control of the work.*
>
> ### Section 3.03 (a)
>
> *All Employees who are members of the Union on the effective date of this*

19

*Agreement shall be required to remain members of the Union as a condition of employment during the term of this Agreement. New Employees shall be required to become and remain members of the Union as condition of employment from and after the eighth (8th) day following the dates of their employment, or the effective date of this Agreement whichever is later.*

As such, it was perfectly appropriate for the Jacquelyn K. Coyle, CPA to rely upon the principle that, unless otherwise provided sufficient proof establishing the contrary, all payroll expenditures of defendant RGB Services, LLC were subject to the provisions of the Sound and Communication Commercial Voice-Data-Video Agreement.

*Misapprehends That Defendant RGB Services, LLC's Payments To Subcontractors Are Not Subject To the Collective Bargaining Agreement*

Also without foundation, defendants challenge the sufficiency and admissibility of plaintiffs' expert report upon the basis that plaintiffs' expert included in her calculations payroll expenditures without consideration of whether the recipients of the payments were independent contractors. The challenge is illegitimate and ignores the Scope of work clause aforementioned and Section 3.03(h) of the Sound and Communication Commercial Voice-Data-Video Agreement.  Section 3.03(h) of the Sound and Communication Commercial Voice-Data-Video Agreement provides:

**Section 3.03 (h)**

*The subletting, assigning or transfer by an individual Employer of any work in connection with voice, data, and video work to any person, firm or*

20

> *corporation not recognizing the IBEW or one of its local unions as the*
> *collective bargaining representative of his Employees on any Voice-Data-*
> *Video work in the jurisdiction of this or any other local union to be*
> *performed at the site of the construction, alteration, painting, or repair of*
> *a building, structure or other work, will be deemed a material breach of*
> *this Agreement.*

Accordingly, Jacquelyn K. Coyle, CPA was perfectly justified to rely upon the principle

that, unless otherwise provided sufficient proof establishing the contrary, all payroll expenditures

of defendant RGB Services, LLC related to subcontractors were subject to the provisions of the

Sound and Communication Commercial Voice-Data-Video Agreement.

### *Criticism of Plaintiffs' Expert Conclusions That They Fail To Give Credit for Amounts Paid*

Defendants next challenge the sufficiency and admissibility of plaintiffs' expert report

upon the basis that certified public accountant Jacquelyn K. Coyle failed to give credit for

amounts paid by defendant RGB Services, LLC to administrator of the funds.  The defendants do

not cite with any degree of specificity remittance payments tendered by defendant RGB Services,

LLC to the funds which they accuse Jacquelyn K. Coyle of having failed to credit, nor have

defendants provided this court with any form of proof which it may embrace to conclude that

Jacquelyn K. Coyle, CPA's payroll compliance review failed to credit RGB Services, LLC with

payments tendered to the funds.  The challenge of the defendants is disingenuous,

unsubstantiated by evidence, and amounts to nothing more than banal criticism.  Accordingly, the

defendants' Motion for Summary Judgment in connection with Count I of the Complaint alleging

that the record does not establish a prima facie case that defendant RGB Services, LLC failed to

make contributions to multi-employer plans under the terms of the plan or under the terms of a collectively bargained agreement upon the basis that the plaintiff's expert report is insufficient or inadmissible should properly be denied.

>   **B.      THE PLEADINGS, DISCOVERY RECORD, AND ATTACHMENTS DEMONSTRATE THAT THE PLAINTIFFS HAVE MADE OUT A PRIMA FACIE CASE IN CONNECTION WITH THE CLAIM  THAT DEFENDANT MICHAEL METSIKAS  IS PERSONALLY LIABLE TO SATISFY AN OBLIGATION TO MAKE CONTRIBUTIONS TO THE MULTI-EMPLOYER BENEFIT FUNDS ON THE GROUNDS OF A PIERCING OF THE CORPORATE VEIL SET FORTH IN COUNT II OF THE COMPLAINT**

Count II of the plaintiffs' Complaint sets forth a claim that defendant Michael Metsikas is personally liable to satisfy an obligation to make contributions to the multi-employer benefit funds on the grounds of a piercing of the corporate veil.  Defendant Michael Metsikas contends that he is entitled to summary judgment in connection with Count II of the Complaint upon a theory that the record proves no facts to support any claimed personal liability on behalf of defendant Michael Metsikas.  As reflected in the January 28, 2011, memorandum opinion issued by Judge John Padaova in the matter captioned Local Union No. 98, et al v. RGB Services, Inc., et al, No. USDCEDPA No. 10-3486 it is well settled that in certain situations the corporate veil can be pierced as a tool in equity to disregard the existence of a corporation and impose liability on the corporation's individual principals and their personal assets. The equitable tool of piercing the corporate veil is appropriately utilized when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield

someone from liability for a crime.[6]  The Third Circuit has set forth the following factors for a

court to consider in determining whether to pierce a corporate veil:

> Whether the corporation is grossly undercapitalized for its purposes; failure to observe
> corporate formalities; non- payment of dividends, the insolvency of the debtor
> corporation at the time, siphoning of funds of the corporation by the dominant
> stockholder, non- functioning of other officers or directors, absence of corporate records,
> and the fact that the corporation is merely a facade for the operations of the dominant
> stockholder or stockholders. Also, the situation must present an element of injustice or
> fundamental unfairness, but a number of these factors can be sufficient to show such
> unfairness. [7]

The list of factors expressed above is not conjunctive, not all of the factors need to be

present for the alter ego doctrine to apply, nor is it an exclusive list.[8]  It is undisputed that at all

relevant times defendant Michael Metsikas was a principal of defendant RGB Services, LLC,

maintained managerial responsibilities and was the sole person with  authority to exercise

financial decision on behalf of the RGB Services, LLC  [Appendix Exhibit 2 - Deposition

Michael Metsikas March 23, 2012, p. 30 line 22 – p. 33 line 3; p. 40 line 8- 23; p. 41 line 8 – p,

42 line p. 22];   [Appendix Exhibit 5 -  paragraph 8 of the Defendants' Answer to the

Complaint]; [Appendix Exhibit 13 – Affidavit of Marco Rivera].   As discussed in previous

portions of this memorandum, and as will be discussed in greater detail below, the record

sufficiently demonstrates prima facie evidence that defendant Michael Metsikas (i) siphoned

funds of defendant RGB Services, LLC ; (ii) that defendant Michael Metsikas was the only

functioning officer or director defendant RGB Services, LLC; (iii) that defendant RGB Services,

---

6 Publicker Industries, Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1069 (3d Cir. Pa. 1979)
7 United States v. Pisani, 646 F.2d 83, 88 (3d Cir.1981) (citing DeWitt Truck Brokers, Inc., v.
W. Ray Flemming Fruit Co., 540 F.2d 681 (4th Cir.1976)) (punctuation omitted).
8 Trustees of National Elevator Industry v. Lutyk, 140 F. Supp.2d 447 (E.D. Pa. 2001); .Galgay
v. Gangloff, 677 F.Supp. 295, 301-02 (M.D.Pa.1987), aff'd, 932 F.2d 959 (3rd Cir.1991)

LLC was merely a facade for the operations of the defendant Michael Metsikas and (iv) that the situation presents an element of injustice or fundamental unfairness that defendant Michael Metsikas used corporate funds to pay for personal expenses and advance his individual interest, and in so doing, deprived the multi-employer benefit funds of contributions.

Defendant Michael Metsikas offered deposition testimony in direct contradiction of the factual intelligence presented in the sworn Affidavit presented by former defendant RGB Services, LLC employee, Mr. Marco Rivera with regard to the purpose and function of payments of company funds to (1) Lisa Miller; (2) Rodolofo Naranjo; (3) Neboa Saudana; (4) Thomas Citro; (5) Aracelis Acosta; (6) CARS BPN; (7) Michael Metsikas; (8) Mary Ellen Milanese; (9) the City of Philadelphia; (10) Steve White; (11) Eduardo Saldana; (12) Nelly Saldana; (13) Delaware Quarries; and (14) Gessika Serrano.

### Defendant RGB Services, LLC's Payment to Lisa Miller

The discovery record reveals twenty seven (27) cancelled checks totaling a value equal to $16,761.32 issued by defendant Michael Metsikas made payable during the calendar years 2005 and 2006 from defendant RGB Services, LLC's operating account to a Lisa Miller. As discussed in the Affidavit of Mr. Marco Rivera, Lisa Miller was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC. Defendant Michael Metsikas, in the furtherance of a fraudulent scheme to subvert ERISA and deprive the Local Union No. 98 multi-employer benefit funds of contributions, tendered company funds to Lisa Miller who was the spouse of an employee of defendant RGB Services, LLC, Robert Miller. At the time of his employment with defendant RGB Services, LLC, and being paid wages by

defendant RGB Services, LLC for performing covered work as a teledata technician Robert Miller was actively collecting unemployment compensation payments.  In furtherance of a scheme promoting unemployment compensation fraud and concealing the payroll expense associated with the RGB Services, LLC's employment of Robert Miller, defendant Michael Metsikas paid the wages earned by Robert Miller to his spouse Lisa Miller.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Lisa Miller.

### *Defendant RGB Services, LLC's Payment to Rodolfo Naranjo*

The discovery record reveals a cancelled check(s) totaling a value equal to $1,700.00 issued by defendant Michael Metsikas made payable during the calendar year 2006 from defendant RGB Services, LLC's operating account to a Rodolfo Naranjo. As discussed in the Affidavit of Mr. Marco Rivera, Rodolfo Naranjo who was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Payments of company funds to Rodolfo Naranjo represented compensation to Rodolfo Naranjo for construction work and service which he performed at the personal residence of defendant Michael Metsikas 831 Welch Road, Philadelphia, PA.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Rodolfo Naranjo.

### *Defendant RGB Services, LLC's Payment to Neboa Saudana*

The discovery record reveals a cancelled check(s) totaling a value equal to $1,700.00

issued by defendant Michael Metsikas made payable during the calendar year 2006 from defendant RGB Services, LLC's operating account to a Neboa Saudana. As discussed in the Affidavit of Mr. Marco Rivera, Neboa Saudana who was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Payments of company funds to Neboa Saudana represents compensation to Neboa Saudana for construction work and services which he performed at the personal residence of defendant Michael Metsikas 831 Welch Road, Philadelphia, PA.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Neboa Saudana.


### *Defendant RGB Services, LLC's Payment to Thomas Citro*

The discovery record reveals a cancelled check(s) totaling a value equal to $4,160.00 issued by defendant Michael Metsikas made payable during the calendar year 2006 from defendant RGB Services, LLC's operating account to a Thomas Citro. As discussed in the Affidavit of Mr. Marco Rivera, defendant Michael Metsikas disbursed company funds for corrupt and illegitimate means by tender to Thomas Citro.  Thomas Citro was not an employee of defendant RGB Services, LLC.  Thomas Citro was a building inspector who defendant Michael Metsikas paid company funds to induce Thomas Citro's favorable opinion of work performed by defendant RGB Services, LLC and to encourage Thomas Citro to overlook work performed by defendant RGB Services, LLC which did not satisfy appropriate industry standards. Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Thomas Citro.

26

*Defendant RGB Services, LLC's Payment to Aracelis Acosta*

The discovery record reveals a cancelled check(s) totaling a value equal to $750.00 issued by defendant Michael Metsikas made payable during the calendar year 2006 from defendant RGB Services, LLC's operating account to Aracelis Acosta.  As discussed in the Affidavit of Mr. Marco Rivera, Aracelis Acosta is the sister of Mr. Marco Rivera who was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Aracelis Acosta.

*Defendant RGB Services, LLC's Payment to CARS BPN*

The discovery record reveals a cancelled check(s) totaling a value equal to $10,000.00 issued by defendant Michael Metsikas made payable during the calendar year 2006 from defendant RGB Services, LLC's operating account to CARS BPN. As discussed in the Affidavit of Mr. Marco Rivera, defendant Michael Metsikas used company funds to satisfy the purchase of a Toyota Forerunner used for defendant Michael Metsikas' personal use and enjoyment. Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to CARS BPN.

*Defendant RGB Services, LLC's Payment to defendant Michael Metsikas*

The discovery record reveals twenty seven (27) cancelled checks totaling a value equal to

27

$160,694.00 issued by defendant Michael Metsikas made payable during the calendar year 2006 from defendant RGB Services, LLC's operating account to himself. The discovery record reveals thirty (30) cancelled checks totaling a value equal to $170,650.00 issued by defendant Michael Metsikas made payable during the calendar year 2007 from defendant RGB Services, LLC's operating account to himself.  The discovery record reveals two (2) cancelled checks totaling a value equal to $1,436.25 issued by defendant Michael Metsikas made payable during the calendar year 2008 from defendant RGB Services, LLC's operating account to himself.  As discussed in the Affidavit of Mr. Marco Rivera, defendant Michael Metsikas siphoned funds of defendant RGB Services, LLC during the calendar years of 2006, 2007 and 2008 by making company checks payable to himself.

## *Defendant RGB Services, LLC's Payment to Mary Ellen Milanese*

The discovery record reveals a cancelled check totaling a value equal to $50.00 issued by defendant Michael Metsikas made payable during the calendar years of 2006 from defendant RGB Services, LLC's operating account to Mary Ellen Milanese. As discussed in the Affidavit of Mr. Marco Rivera, Mary Ellen Milanese is a family member of defendant Michael Metsikas. Mary Ellen Milanese was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Mary Ellen Milanese.

## *Defendant RGB Services, LLC's Payment to The City of Philadelphia*

The discovery record reveals a cancelled check totaling a value equal to $49.00 issued by defendant Michael Metsikas made payable during the calendar years of 2007 from defendant RGB Services, LLC's operating account to the City of Philadelphia. As discussed in the Affidavit of Mr. Marco Rivera, the payment of company funds to the City of Philadelphia represents payment to satisfy personal expense associated with parking tickets issued defendant Michael Metsikas or his spouse.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to the City of Philadelphia

### Defendant RGB Services, LLC's Payment to Steve White

The discovery record reveals a cancelled check totaling a value equal to $575.00 issued by defendant Michael Metsikas made payable during the calendar years of 2007 from defendant RGB Services, LLC's operating account to the Steve White.  As discussed in the Affidavit of Mr. Marco Rivera, Steve White who was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Payment of company funds to Steve White represents expense and cost associated with personal real estate business dealings which defendant Michael Metsikas jointly ventured with Steve White.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Steve White.

### Defendant RGB Services, LLC's Payment to Eduardo Saldana

The discovery record reveals a cancelled check(s) totaling a value equal to $95,730.00

issued by defendant Michael Metsikas made payable during the calendar years of 2008 from defendant RGB Services, LLC's operating account to Eduardo Saldana. As discussed in the Affidavit of Mr. Marco Rivera, Eduardo Saldana was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Payment of company funds to Eduardo Saldana represents compensation to Eduardo Saldana for construction work and service which he performed at the personal residence of defendant Michael Metsikas 831 Welch Road, Philadelphia, PA.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Eduardo Saldana.

### *Defendant RGB Services, LLC's Payment to Nelly Saldana*

The discovery record reveals a cancelled check(s) totaling a value equal to $1,500.00 issued by defendant Michael Metsikas made payable during the calendar years of 2008 from defendant RGB Services, LLC's operating account to a Nelly Saldana. As discussed in the Affidavit of Mr. Marco Rivera, Nelly Saldana was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Nelly Saldana is the spouse of Eduardo Saldana.  Payment of company funds to a Nelly Saldana represents money utilized by Nelly Saldana to satisfy bail imposed by the court upon Eduardo Saldana as a result of his arrest for criminal behavior.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Nelly Saldana.

### *Defendant RGB Services, LLC's Payment to Delaware Quarries*

30

The discovery record reveals a cancelled check(s) totaling a value equal to $5,739.36 issued by defendant Michael Metsikas made payable during the calendar years of 2007 from defendant RGB Services, LLC's operating account to a Delaware Quarries.  As discussed in the Affidavit of Mr. Marco Rivera, Michael Metsikas used company funds to satisfy personal expenses by tendering company funds to a Delaware Quarries.  Payment of company funds to Delaware Quarries represents the cost of gravel bedding supplies utilized in the personal residence of defendant Michael Metsikas and business construction ventures that did not advance the business interest of RGB Services, LLC.  Defendant Michael Metsikas used company funds to advance illegitimate and non-business related expenses by tendering company funds to Delaware Quarries.

### *Defendant RGB Services, LLC's Payment to Gessika Serrano*

The discovery record reveals a cancelled check(s) totaling a value equal to $7,000.00 issued by defendant Michael Metsikas made payable during the calendar year 2008 from defendant RGB Services, LLC's operating account to Gessika Serrano.  As discussed in the Affidavit of Mr. Marco Rivera, Gessika Serrano was the girlfriend of an employee of defendant RGB Services, LLC.   Gessika Serrano was never employed by defendant RGB Services, LLC or performed work related services on behalf of RGB Services, LLC.  Defendant Michael Metsikas used company funds to satisfy non-business related expenses by tendering company funds to Gessika Serrano.

Accordingly, the defendants' Motion for Summary Judgment in connection with Count II of the Complaint alleging that the record does not establish a prima facie case that defendant

31

Michael Metsikas is personally liable to satisfy an obligation to make contributions to the multi-employer benefit funds upon the grounds of a piercing of the corporate veil should properly be denied.

**IV.** **CONCLUSION**

For the foregoing reasons and any others which may arise pending a hearing on this matter, plaintiffs respectfully request that this Honorable Court deny the defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

Respectfully submitted,

MARINO, CONROY & COYLE
301 Wharton Street
Philadelphia, Pa 19147
Telephone (215) 462-3200
Telecopier (215) 462-4763

By:   SFM6768_____
Steven F. Marino, Esquire
Attorney I.D. 53034
Attorneys for Plaintiffs

Dated: July 31, 2012

UNITED STATES DISTRICT COURT FOR THE EASTERN
DISTRICT OF PENNSYLVANIA

LOCAL UNION NO. 98                         :
INTERNATIONAL BROTHERHOOD OF               :
ELECTRICAL WORKERS, et al.                 :        Civil Action No. 11-4579
                                           :
                         Plaintiffs        :
                 v                         :
                                           :
RGB SERVICES, LLC, et al.                  :
                                           :
                         Defendants        :
_____        :

## CERTIFICATE OF MAILING

I certify that on July 31, 2012, I caused to be electronically delivered a copy of the foregoing Plaintiffs' Response In Opposition Defendants' Motion For Summary Judgment and supporting papers upon the persons and in the manner indicated below, which service satisfies the requirements of Federal Rule of Civil Procedure 5.

Regular Mail and Electronic Case Filing:
Matthew B. Weisberg, Esquire
Weisberg Law, P.C.
7 South Morton Avenue
Morton, PA 19070
 [Counsel for defendants]

                              MARINO, CONROY & COYLE
                              301 Wharton Street
                              Philadelphia, Pa 19147
                              Telephone (215) 462-3200
                              Telecopier (215) 462-4763

                    By:    SFM6768_____
                              Steven F. Marino, Esquire
                              Attorney I.D. 53034
Dated:  July 31, 2012         Attorneys for Plaintiffs